IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW HAMPSHIRE INSURANCE COMPANY, | No. C 06-2909 SBA |
| Plaintiff. | |
| v. | **ORDER**<br>[Docket No 38] |
| MENDOCINO FOREST PRODUCTS, CO., LLC, | |
| Defendant. | |

Currently before the Court is plaintiff New Hampshire Insurance Company's Motion for Summary Judgment [Docket No 38]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby DENIES the motion for the reasons set forth below**.**

## **BACKGROUND**

Plaintiff New Hampshire Insurance Company, a division of AIG ( "New Hampshire") is suing Defendant Mendocino Forest Products ("Mendocino"), a manufacturer of wood and fence products sold through Home Depot stores, for reimbursement of settlement funds paid on Home Depot's behalf in settlement of a lawsuit for negligence against Home Depot after a display of Mendocino's fence panels fell on a customer in Home Depot's Ladera Heights store (the "Johnson Action"). *See* Docket No. 39 (request for judicial notice of complaint in *Kevin Johnson v. Home Depot USA, Inc.*, Superior Court of the State of California, County of Los Angeles, Case No. YC 049455).

In the Johnson Action, the customer, Kevin Johnson alleged that on or about January 2, 2003, he went to the Ladera Heights Home Depot store to shop for pre-fabricated fence sections. Davis Decl.,

Exh. S. When he approached the area where Mendocino's fencing was displayed, he noticed some of the fence panels carelessly left on the ground, just in front of the shelving where the fence panels were displayed. *Id.* With a pen and paper in hand to write down the prices, Johnson stepped between the fencing on the ground and the display rack to begin looking through the fence sections. *Id.* He noticed that some of the fencing on the display shelf was unstable and was leaning a bit. *Id.* Johnson further alleged that as he began to shuffle through the fence sections, they fell on him, causing him to sustain bodily injury. *Id.* Johnson filed suit against Home Depot on December 20, 2004, alleging a single cause of action for negligence.

Home Depot tendered the defense and indemnity of the Johnson Action to New Hampshire and Mendocino on April 4, 2005. York Claims Service ("York"), the third party Claims Administrator for New Hampshire, was responsible for handling Home Depot's tender of the Johnson Action. Davis Decl., Exh. U. After reviewing the known facts, the Commercial General Liability Policy issued by New Hampshire to Mendocino (the "Policy"), and the Buying Agreement between Mendocino and Home Depot, York concluded that Home and that New Hampshire had a duty to defend Home Depot in the Johnson Action. *Id.* New Hampshire, however, did not approve York's recommendation to provide a defense for Home Depot, and directed York to decline Home Depot's tender and close the file. *Id.* York complied, and on September 27, 2005, over five months after Home Depot's initial tender letter, sent a letter to Home Depot officially declining the tender. *Id.*

On October 13, 2005, Mendocino's coverage counsel, Linda Klamm, began corresponding with York in an effort to persuade New Hampshire to reconsider its declination of the tender. Klamm Decl., ¶ 4. In late October 2005, New Hampshire retained as coverage counsel Jim Wagoner of the firm McCormick, Barstow, Sheppard, Wayte & Carrth to respond to the ongoing tender issue with Home Depot. *Id.*, ¶ 5. Wagoner, on behalf of New Hampshire, responded to letters from Home Depot's counsel and Mendocino's counsel, and continued to decline the tender.

On November 28, 2005, Home Depot filed two separate actions against Mendocino and New Hampshire to recover any losses Home Depot might sustain as a result of the Johnson Action. Klamm Decl., Exh. M. Home Depot's action against Mendocino was filed in Mendocino County Superior Court and alleged various causes of action for indemnity and breach of contract. In this complaint, Home

1 Depot alleged that Mendocino bore responsibility for Johnson's injuries because Mendocino "failed to
2 inspect their products. . . , failed to advise or improperly advised Home Depot regarding the
3 merchandising of its products, and failed in other respects to perform its in store duties as it was
4 obligated to do by virtue of its contractual obligations to Home Depot." Goodman Decl. Exh. E.
5 Mendocino tendered its defense in the action filed by Home Depot to New Hampshire on November 29,
6 2005. Klamm Decl., Exh. M.

7 On December 1, 2005, a mediation was held in which Johnson, Home Depot and Mendocino
8 entered into a settlement and release of claims (the "Johnson Agreement"), resolving the Johnson
9 Action. Attending this mediation were Home Depot's defense counsel, Craig Barnes, and its in-house
10 counsel, Thomas Best, and New Hampshire's coverage counsel, Jim Wagoner. At the time, according
11 to Mendocino, New Hampshire had agreed to fund neither Home Depot's defense nor any settlement
12 of the Johnson Action. Goodman Decl., ¶ 3, Klamm Decl., ¶ 11, Dep. Best, Ex. 0, 103: 16-104:21, Dep.
13 Barnes, 67:16-71:14.

14 After the mediation, New Hampshire negotiated a proposal with Mendocino and Home Depot
15 to fund the Johnson settlement as well as certain defense costs. Goodman Decl., ¶ 5. Over two months
16 after the Johnson settlement, New Hampshire, Mendocino and Home Depot reached a resolution which
17 is documented in a separate settlement agreement (the "New Hampshire Settlement Agreement"). The
18 first draft of the New Hampshire Settlement Agreement was prepared by Goodman and forwarded to
19 Wagoner on December 7, 2005. In paragraph 13 of this initial draft, Goodman recited the events that
20 occurred as follows: "on or about December 1, 2005, Home Depot entered into a settlement agreement
21 of the Johnson Lawsuit . . . New Hampshire was represented at the mediation by their counsel, but
22 declined to participate in the mediation, to defend or indemnify Home Depot or to fund the settlement
23 of the Johnson Lawsuit." Goodman Decl., Exh. G.

24 During the negotiations of the New Hampshire Agreement, on December 13, 2005, (two weeks
25 after the case settled at the mediation) counsel for New Hampshire (Jim Wagoner) sent a letter to
26 counsel for Home Depot (Joshua Goodman), purporting to document a conversation that allegedly
27 occurred on November 29, 2005 (two days before the mediation). *See* Klamm Decl., Exh. Q. This
28 December 13, 2005 letter from Wagoner stated that he had verbally advised Goodman on November 29

3

that New Hampshire would undertake a defense on behalf of Home Depot.

As part of the final New Hampshire Settlement Agreement, Mendocino assumed all of Home Depot's obligations and liabilities to New Hampshire arising out of the Johnson Action. *See id.*, Exh. O. Specifically, Mendocino assumed any liability or obligation Home Depot could have to reimburse New Hampshire for the settlement payment in the Johnson Action. *Id.* In the New Hampshire Settlement Agreement, the parties also agreed upon the scope of New Hampshire's rights to seek reimbursement. Plaintiff now sues for reimbursement of the monies paid to Johnson.

## **LEGAL STANDARD**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). An issue is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d at 1146.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on the pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002); *Federal Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

## **ANALYSIS**

**I.  Burden of Proof**

As an initial matter, New Hampshire argues that, despite the fact that it is the party moving for summary judgment, Mendocino, and not New Hampshire, bears the burden of proving that the Johnson

4

Action was an insured claim, citing the principle that "the mere fact that plaintiffs have instituted a declaratory judgment action is not in and of itself determinative of the question of burden of proof." *United Pacific Ins. Co. v. Safety-Kleen Corp.*, 1993 WL 505393, *4 (N.D. Cal.1993) (citing *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1176 (3d Cir.1976), *cert. denied*, 429 U.S. 1053 (1977)). Mendocino counters that this maxim does not apply here as this is not a declaratory judgment action, but rather an action to recover amounts already paid. The court in *Buss v. Superior Court*, 16 Cal.4th 35, 53 (1997), explained that: "Evidence Code section 500 provides that, generally, a party desiring relief must carry the burden of proof thereon. We can find no exception for an insurer seeking reimbursement for defense costs. We will create none."

This issue is irrelevant to the disposition of the instant motion as, regardless of how the burden is allocated, as described below New Hampshire has failed to demonstrate that there is no triable issue of fact such that Mendocino could not prevail, even if the burden were on it.

## II.    Failure to Defend

As a defense to New Hampshire's action, Mendocino argues that because New Hampshire wrongfully refused to defend it, it is not entitled to reimbursement of any amounts paid in settlement. The general rule in California is that "an insurer that wrongfully refuses to defend is liable on the judgment against the insured." *Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.*, 219 F.3d 895, 901 (9th Cir. 2000). There is little question that New Hampshire was required to defend, if not indemnify, Home Depot in the Johnson Action, as the duty to defend is broader than the duty to indemnify, and extends to all claims that are even *potentially* covered. *See Buss v. Superior Court*, 16 Cal.4th 35, 46-47 (Cal. 1997) ("[I]n an action wherein all the claims are at least potentially covered, the insurer has a duty to defend."). Indeed, this is the very conclusion that New Hampshire's own the third party claims administrator came to, and New Hampshire's implicit concession to this obligation is demonstrated by the fact that New Hampshire is seeking only the fees it paid in settlement and is not seeking reimbursement of defense fees.

Hew Hampshire argues that it is a "well-established principle" that an insurer is not "automatically" obligated to pay a settlement or judgment against an insured if the insurer wrongfully fails to defend, citing to *Zurich Ins. Co. v. Killer Music, Inc*., 998 F.2d 674 (9th Cir. 1993). While it

5

may be true that an insurer may not be "automatically" obligated by its failure to defend, *Zurich* actually stands for the proposition that an insurer is liable for a "reasonable settlement of the claim in good faith," but is not obligated beyond the reasonable value of the settlement. *Id.* at 679. Indeed, it is well settled in California law that where an insurer wrongfully fails to defend an insured, the insurer thereby becomes "bound to reimburse [the insured] for the full amount of any obligation reasonably incurred by [insured]." *Manus v. Ranger Ins. Co.*, 142 Fed. Appx. 280, 282 (9th Cir. 2005). Moreover, "a reasonable settlement made by the insured to terminate the underlying claim against him may be used as presumptive evidence of the insured's liability on the underlying claim, and the amount of such liability." *Id.* (*citing Culley & Assoc. v. Superior Court*, 10 Cal.App.4th 1484, modified, 11 Cal.App.4th 1206 (1992). Accordingly, if Mendocino can demonstrate that New Hampshire wrongfully failed to defend the Johnson Action, New Hampshire will be precluded from seeking reimbursement for the reasonable value of the settlement.

Thus, in order to prevail at summary judgment, New Hampshire must demonstrate that there is no triable issue of fact as to whether it wrongfully failed to defend the Johnson Action. New Hampshire alleges that it agreed to defend the Johnson Action, subject to a reservation of rights, on November 29, 2005 -- two days prior to the December 1st settlement. New Hampshire's sole piece of evidence in this regard is a December 13, 2005 (i.e., two weeks after the case settled at the mediation) letter from counsel for New Hampshire (Jim Wagoner) to counsel for Home Depot (Joshua Goodman), purporting to document a conversation that allegedly occurred on November 29, 2005, in which Wagoner verbally advised Goodman that New Hampshire would undertake a defense on behalf of Home Depot. *See* Klamm Decl., Ex. Q.  However, Goodman adamantly denies that such a conversation ever took place, or that New Hampshire otherwise agreed to defend the Johnson Action any time prior to the December 1st Settlement. Goodman Decl., ¶ 3. Similarly, Craig Barnes (defense counsel for Home Depot in the Johnson Action), Tom Best (in-house counsel for Home Depot during the Johnson Action), and Linda Klamm (coverage counsel for Mendocino) all deny being advised by anyone at New Hampshire of any such defense extended to Home Depot prior to the case settling at the December 1st mediation. Klamm Decl., ¶ 11, Dep. Best, Ex. 0, 103: 16-104:21, Dep. Barnes, 67:16-71:14. Moreover, Mendocino's argument is further supported by the fact that the first draft of the New Hampshire Settlement

6

Agreement, which was prepared by Joshua Goodman, documents his version of events as follows: "New Hampshire was represented at the mediation by their counsel but declined to participate in the mediation to defend or indemnify Home Depot or to fund the settlement of the Johnson lawsuit."(Goodman Decl., ¶ 3).

This factual dispute identified by Mendocino is somewhat eyebrow-raising: the implication is that New Hampshire's counsel simply fabricated the alleged conversation after the fact for the purposes of creating a paper trail showing that New Hampshire timely agreed to defend the Johnson Action, when it in fact did not. Thus, there is a robust factual dispute as to whether New Hampshire agreed to defend the Johnson Action before the settlement took place, and the resolution of this issue directly impacts New Hampshire's entitlement to reimbursement. Accordingly, New Hampshire's motion for summary judgment can be denied on those grounds alone.

### III. The Indemnity Agreements

In addition to various factual disputes, the parties dispute the correct interpretation of the relevant insurance policy and indemnity agreement. New Hampshire argues that the indemnity agreement demonstrates that it is entitled to reimbursement because the underlying Johnson Action only related to the alleged negligence of Home Depot, and not the negligence of Mendocino. Mendocino counters that, to the contrary, the agreements demonstrate that, based on the allegations in the Johnson Action alone, New Hampshire was required to indemnify Home Depot, regardless of any negligence (or lack thereof) by Mendocino.

#### A. Insurance Coverage Provided By New Hampshire

New Hampshire issued a primary Commercial General Liability Policy (the "Policy") to Mendocino for the policy period of April 29, 2002 through April 29, 2003. The Policy provided coverage for bodily injury for which Mendocino was obligated to pay damages by reason of the assumption of liability in an "insured contract." An "insured contract" is defined as follows:

> That part of any other contract or agreement pertaining to (Mendocino's) business. . . under which (Mendocino) assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*See* Compl., Ex A.

**B.     The Indemnity Agreement Between Mendocino And Home Depot**

Mendocino's fence products are sold in Home Depot stores pursuant to a written "U.S. Supplier Buying Agreement" (the "Buying Agreement"). The Buying Agreement provides that Mendocino is required to indemnify and hold the Home Depot harmless for losses arising, or alleged to have arisen out of:

> (1) any acts or omissions of Mendocino, its employees and agents, or from Mendocino's merchandise or its use;
>
> (2) any independent act of liability of Home Depot arising out of the sale or use of Mendocino's merchandise, unless such act is determined by a trier of fact to be the sole proximate cause of the loss; and
>
> (3) the acts or omissions of any employees or agents of Mendocino providing In-Store Services to Home Depot.

Higgenbottom Decl., Ex. C, ¶ 8. The Buying Agreement provides that any disputes concerning its terms are to be interpreted and resolved pursuant to the laws of the state of Georgia. *Id.* ¶ 26.

The Buying Agreement also incorporates certain "Vendor In-Store Responsibilities" which are guidelines that govern Mendocino employees' responsibilities with regard to the maintenance and merchandising of Mendocino's products at the Home Depot stores. Pursuant to these "Vendor In-Store Responsibilities," Mendocino employees were responsible for re-merchandising the existing fence products, merchandising new fence products, removing current stock and displays, constructing new displays and maintaining the areas where the fence products are merchandised. The Mendocino employees would also make certain that their fence products were neatly arranged on the displays. Higgenbottom Decl., Exh. C, ¶ 18.

**C.     Mendocino's Liability for Injuries Arising From Mendocino's Merchandise**

The Mendocino-New Hampshire Policy provided coverage for bodily injury for which Mendocino was obligated to pay damages by reason of the assumption of liability in an "insured contract." An "insured contract" covers "any other contract or agreement pertaining to (Mendocino's) business. . . under which (Mendocino) assumes the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."

The Mendocino-Home Depot Indemnity Agreement appears to be precisely such an "insured contract." That contract requires Mendocino to indemnify Home Depot against "losses arising, or

8

alleged to have arisen out of . . .Mendocino's *merchandise or its use*." Higgenbottom Decl., Ex. C, ¶ 8 (emphasis added). Under Georgia law, the phrase "arising out of" is given a broad interpretation so as to encompass any causal relationship. *See BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494 (2007). In *BBL-McCarthy*, the Georgia Court of Appeal explained its interpretation of the "arising out of" language in an indemnity agreement as follows: "we construe this phrase in an indemnity clause to mean 'had its origins in' or 'grew out of and to encompass almost any causal connection or relationship." *Id.* at 500. The court explained that "arising out of" "does not mean proximate cause in the strict legal sense, nor require a finding that the injury was directly and proximately caused by [the indemnitee's] actions. Almost any causal connection or relationship will do." *Id.* at 498.

It is undisputed that the Johnson Action alleged losses that "ar[ose] out of . . . Mendocino's merchandise" in the broad sense of the term as adopted by the Georgia courts. It appears to be the case, therefore, simply based on the allegations in the Johnson Action and the interpretation of the two contracts, that Mendocino was required to indemnify Home Depot in the Johnson Action, and New Hampshire was in turn required to indemnify Mendocino, and therefore New Hampshire is not entitled to reimbursement. Indeed, the clarity of this interpretation is such that it might provide grounds for the Court to *sua sponte* enter summary judgment in *Mendocino's* favor. *See Kassbaum v. Steppenwolf Prod., Inc.*, 236 F.3d 487, 494 (9th Cir.2000) ("It is generally recognized that a court has the power sua sponte to grant summary judgment to a non-movant when there has been a motion but no cross-motion."); s*ee also Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir.1982) (When one party moves for summary judgment and the record reveals no genuine dispute on a material fact, "the overwhelming weight of authority supports the conclusion that ... the court may *sua sponte* grant summary judgment to the non-moving party.").

However, while the issue of contract interpretation has been briefed by both sides, and New Hampshire requested that the court summarily adjudicate the issues related to contract interpretation, neither side has specifically addressed the issue of Mendocino's liability based solely on the fact that the Johnson Action indisputably "arose from" Mendocino's *merchandise* itself, as opposed to Mendocino's contractual responsibilities for maintaining the merchandise in-store. Nor has Mendocino requested that the court enter summary judgment in its favor. "[G]reat care must be exercised to assure

9

that the original movant has had an adequate opportunity to show that there is a genuine issue and that his [or her] opponent is not entitled to judgment as a matter of law." *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d. Cir.1996). Thus, while it is empowered to do so, the Court will not enter summary judgement *sua sponte* on the basis of the arguments currently before it. It will, however, deny New Hampshire's motion on the grounds that there is a colorable argument that the contracts may be interpreted as requiring New Hampshire to indemnify Home Depot solely on the basis of the allegations in the Johnson Action.

### D. Mendocino's Liability for Injuries Arising From Any Independent Act of Liability of Home Depot or In-Store Services

Even were it the case that the first indemnity provision in the Buying Agreement could not be interpreted as requiring Mendocino to indemnify Home Depot solely on the basis of allegations related to Mendocino's merchandise, the second and third provisions could require New Hampshire to indemnify Home Depot.

The second indemnity provision in the Buying Agreement requires Mendocino to indemnify Home Depot for "any independent act of liability of Home Depot arising out of the sale or use of Mendocino's merchandise, unless such act is determined by a trier of fact to be the sole proximate cause of the loss." Here, the Johnson Action clearly alleged an "independent act of liability" by Home Depot. A question is raised as to whether, on the basis of the allegation in the Johnson Action, it can be said that the injuries arose out of the "sale or use of Mendocino's merchandise." While New Hampshire argues that this indemnity provision only applies when Mendocino's merchandise has actually been sold to a customer, Mendocino argues that such a phrase also encompasses the presentation of Mendocino's goods for sale. Neither side presents particularly compelling arguments for its interpretation of the term "sale or use," however, in light of the broad scope of the term "arising from" adopted by the Georgia courts, there is at least a colorable argument that Home Depot's alleged failure to properly maintain the display "arose from" the "sale or use" of Mendocino's merchandise. *See BBL-McCarthy*, 285 Ga.App. at 500.

The third indemnity provision in the Buying Agreement requires Mendocino to indemnify Home Depot for "the acts or omissions of any employees or agents of Mendocino providing In-Store Services

10

to Home Depot." As noted above, Mendocino's In-Store Services included re-merchandising the existing fence products, merchandising new fence products, removing current stock and displays, constructing new displays and maintaining the areas where the fence products are merchandised, and making certain that their fence products were neatly arranged on the displays. Higgenbottom Decl., Ex. C, ¶ 18. Thus, to the extent that Johnson's injuries were caused by Mendocino's failure to properly perform such In-Store Services, Mendocino would be liable to indemnify Home Depot for Johnson's damages.

Somewhat strangely, rather than arguing that there is no evidence that Mendocino failed to properly perform its In-Store Services, New Hampshire argues instead that Mendocino was not involved in anything related to the display of Mendocino's products in Home Depot stores, relying on testimony from Mendocino employees that they do not recall attending to such duties at the Ladera Home Depot store around the time of the accident. *See* Christofferson Decl., Ex. I, *passim*. However, this testimony does not show that Mendocino was not required to perform these duties; to the contrary, if anything, it demonstrates that Mendocino was remiss in failing to properly attend to its In-Store Services. Accordingly, it cannot be said as a matter of law that Mendocino had no duty to properly maintain in-store displays or that there is no question that it properly attended to them. As such, a question remains as to whether Mendocino is required to indemnify Home depot under this provision of the Buying Agreement.

## **CONCLUSION**

There is robust factual dispute as to whether New Hampshire failed to timely defend the Johnson Action, which failure would preclude New Hampshire from seeking reimbursement. Additionally, there is a strong case to be made for the argument that, simply based on the language of the indemnity provisions and the allegations in the Johnson Action, New Hampshire was required to indemnify Home Depot in the Johnson Action, regardless of any lack of negligence by Mendocino. Accordingly, plaintiff's motion for summary judgment [Docket No 38] is DENIED.[1]

---

[1] While each party objects to the other's version of the New Hampshire insurance policy issued to Mendocino, the two versions agree with respect to the language relied on by the Court. New Hampshire's unopposed request for judicial notice of the complaint in the Johnson Action [Docket No.

IT IS SO ORDERED.

Dated: 9/26/07

                                                                                   _____
                                                                                   SAUNDRA BROWN ARMSTRONG
                                                                                   United States District Judge

---

28 | 39] is granted.